**UNITED STATES of America, Appellee,**

v.

**Thomas Bruce ALLEN, a/k/a Tom Allen, Appellant.**

**No. 77–1891.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1978.

Decided April 19, 1978.

436

Michael M. Hickey, Rapid City, S. D., for appellant.

David V. Vrooman, U. S. Atty., and Jeffrey L. Viken, Asst. U. S. Atty. (argued), Rapid City, S. D., on brief, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and BECKER, Senior District Judge.*

* The Honorable William H. Becker, Senior District Judge, Western District of Missouri, sitting by designation.

HEANEY, Circuit Judge.

Thomas Bruce Allen, an Indian, was found to be a juvenile delinquent under 18 U.S.C. § 5031 et seq., for the commission of assault with a deadly weapon against another Indian within Indian Country in violation of 18 U.S.C. §§ 1153 and 113(c). Allen appeals from the adjudication of delinquency on the grounds that the trial court lacked jurisdiction over the proceedings, that his request for a preliminary hearing should have been granted and that the evidence was insufficient to support the trial court's findings. We affirm.

### I.

Allen first contends that since the status of juvenile delinquency is not one of the crimes enumerated in 18 U.S.C. § 1153, jurisdiction over his offense lay not in federal court but rather in the tribe.

■ Generally, offenses committed by an Indian against another Indian within Indian Country are subject to the jurisdiction of the tribal courts if not among those crimes expressly subject to federal jurisdiction under the Major Crimes Act, 18 U.S.C. § 1153.[1] United States v. Antelope, 430 U.S. 641, 643 n. 2, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977). Since a finding of delinquency under the Federal Juvenile Delinquency Act[2] is an adjudication of status, not a conviction for a crime, United States v. King, 482 F.2d 454, 456 (6th Cir.), cert. denied, 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1973); Fagerstrom v. United States, 311 F.2d 717, 720 (8th Cir. 1963), Allen contends that a proceeding under the Act is jurisdictionally distinct from a criminal proceeding under § 1153, with the result

that no federal jurisdiction existed over his offense. We disagree.

■ The Federal Juvenile Delinquency Act defines "juvenile delinquency" as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031. Thus, it is apparent that the Act does not create a substantive offense with its own jurisdictional basis, but rather establishes a procedural mechanism for the treatment of juveniles who are already subject to federal jurisdiction because of the commission of acts cognizable under other federal criminal statutes. See United States v. Mechem, 509 F.2d 1193, 1195–1196 (10th Cir. 1975). Cf. Cox v. United States, 473 F.2d 334, 335 (4th Cir.), cert. denied, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973). Indeed, prior to the enactment of the Federal Juvenile Delinquency Act of 1938,[3] juvenile offenders against the laws of the United States were subject to prosecution in the same manner as were adults. See George v. United States, 196 F.2d 445, 453–454 (9th Cir.), cert. denied, 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952); United States v. Borders, 154 F.Supp. 214, 215 (N.D.Ala. 1957), aff'd, 256 F.2d 458 (5th Cir. 1958).

■ Allen was found by the trial court to have committed assault with a deadly weapon, an act cognizable under § 1153. The fact that he elected to be treated procedurally as a juvenile did not alter that underlying federal jurisdiction by making his acts any less violative of that statute. The existence of primary federal jurisdiction under § 1153 is evident when it is considered that Allen could have waived treatment as a juvenile and requested crim-

---

1. An exception to this rule exists where the offense falls within the general criminal laws of the United States which apply whenever citizens are within the territorial jurisdiction of the United States, including Indian reservations. United States v. Dodge, 538 F.2d 770, 775 (8th Cir. 1976); Stone v. United States, 506 F.2d 561, 563–564 (8th Cir. 1974), cert. denied, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). The commission of assault with a deadly weap-

on, with which Allen was charged, is not such an offense.

2. 18 U.S.C. §§ 5031–5042. These sections were substantially amended by the Juvenile Justice and Delinquency Prevention Act of 1974, Pub.L. No. 93–415, Title V, §§ 501–512, 88 Stat. 1133 (1974).

3. Pub.L. No. 75–666, 52 Stat. 764 (1938).

**438**

inal prosecution as an adult.[4]  We find no basis for Allen's denial of the existence of federal jurisdiction.

Allen next contends that federal jurisdiction was improperly invoked because the United States Attorney failed to comply with § 5032 of the Federal Juvenile Delinquency Act.  That section provides:

> A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect tó such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.
>
> If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

Pursuant to this statute, the United States Attorney filed a certification with the trial court stating that the State of South Dakota "either does not have jurisdiction or refuses to assume jurisdiction or lacks available programs and services adequate for the needs of the juvenile * * *."  Allen argues that a similar determination as to the jurisdiction of the tribal courts and the availability of tribal facilities should also have been made.

The Government responds that the plain language of the statute limits the Attorney General's duty of investigation and certification to state jurisdiction and state facilities;  and that, in any event, the Oglala Sioux Tribe could not have had jurisdiction because jurisdiction over Allen's offense lay exclusively in federal court.  Although we agree that jurisdiction lay in federal court, obviously that fact does not itself dispose of the need to file a certification to that effect if the existence of tribal jurisdiction and the adequacy of tribal facilities are proper subjects for investigation and certification under § 5032.[5]  We, therefore, address the broader question as to whether § 5032 was intended by Congress to encompass tribal as well as state authority.

■  The plain meaning of the words of a statute is the most persuasive evidence of congressional intent.  *See Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966), *quoting United States v. American Trucking Assns.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).  Section 5032 states that the Attorney General must certify that "the juvenile court or other appropriate court of a [s]tate" lacks or declines jurisdiction or lacks adequate facilities, and that in the absence of such certification the juvenile must be surrendered to the authorities "of such [s]tate."  The plain meaning of these words, that the certification procedure is limited in applicability to the exercise of

---

**4.**  18 U.S.C. § 5032.  As the result of the 1974 amendments to the Federal Juvenile Delinquency Act, all juveniles under the age of sixteen are removed from the ordinary criminal process unless they consent to its jurisdiction.  A juvenile who is at least sixteen but less than eighteen years of age is similarly treated, unless he has committed an act which, if committed by an adult, would be a felony punishable by a maximum penalty of imprisonment of ten years or more, life imprisonment or death.  Under those circumstances, the Attorney General may bring a motion requesting that the juvenile be prosecuted as an adult.

**5.**  Indeed, exclusive federal jurisdiction over the acts enumerated in § 1153 precludes the possibility of state as well as tribal jurisdiction.  However, the Government acknowledges that a

certification regarding state authority must still be filed pursuant to § 5032.  The fact that the tribe could never have jurisdiction over a § 1153 offense committed by a juvenile would, however, make certification as to tribal authority under § 5032 a relatively meaningless gesture even if we were to agree with Allen that such certification is required under the statute.  Since lack of jurisdiction obviates the need to assess the adequacy of the juvenile facilities of the competing sovereign under § 5032, *see United States v. Vancier*, 515 F.2d 1378 (2d Cir.), *cert. denied*, 423 U.S. 857, 96 S.Ct. 107, 46 L.Ed.2d 82 (1975), any certification as to tribal authority (as is the case regarding state authority under these circumstances) would be limited to a recitation to that effect.

concurrent *state* jurisdiction and the availability of *state* facilities, is inescapable.

Nor do we find this result to be plainly at variance with congressional policy as expressed at the time of the enactment of the Juvenile Justice and Delinquency Prevention Act of 1974.[6] *See United States v. American Trucking Assns., supra* at 543, 60 S.Ct. 1059. It is true that it is stated in the Report of the Senate Judiciary Committee which accompanied the Act that juvenile delinquency is "essentially a [s]tate and local problem," necessitating substantial federal grants to state and local governments for the development of programs for the prevention and treatment of delinquency.[7] The granting of funds to state and local governments does not, however, of itself indicate any congressional intention to relinquish federal jurisdiction over juveniles who would otherwise be subject to treatment under the Federal Juvenile Delinquency Act. And, in discussing the certification requirement established in § 5032, the Committee states that under that section, as amended, "[a] juvenile shall not be proceeded against in [f]ederal court unless the *[s]tate* courts refuse jurisdiction, or do not have adequate services available."[8] (Emphasis added.)

■ In holding that the United States Attorney complied with the requirements of

§ 5032, we intimate no view as to whether the federal government or tribal authorities should, as a matter of policy, be charged with responsibility for the detention and treatment of Indian juveniles who commit major crimes in Indian Country.[9] We hold only that § 5032, as written, does not require the filing of a certification as to the existence of tribal jurisdiction and the adequacy of tribal facilities before federal jurisdiction can be invoked.

## II.

Allen next contends that his request for a preliminary examination should have been granted. Citing *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), he contends that the denial of his request for a preliminary examination, followed by twenty-one days of incarceration pending trial, deprived him of a judicial determination of probable cause in derogation of his Fourth Amendment rights.[10]

■ This contention is without merit. Assuming that the requirements of the Fourth Amendment as set forth in *Gerstein* apply to the pretrial detention of juveniles as well as to that of adults,[11] we find no violation of Allen's constitutional rights. In *Gerstein*, the Supreme Court held that the Fourth Amendment requires a judicial determination of probable cause as a pre-

---

6. *See* note 2, *supra.*

7. S.Rep. No. 1011, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin. News, pp. 5283, 5286.

8. *Id.* at 5320.

9. *See,* Note, *Education, Jurisdiction and Inadequate Facilities as Causes of Juvenile Delinquency Among Indians,* 48 N.D.L.Rev. 661, 684–694 (1972); J. Mudd, *Indian Juveniles and Legislative Delinquency in Montana,* 33 Mont. L.Rev. 233 (1972).

10. Allen makes no claim that he had a statutory right to a preliminary examination. No provision for a preliminary examination to determine probable cause is made under the simplified procedure established by the Federal Juvenile Delinquency Act. *See* 18 U.S.C. §§ 5032, 5034 and 5036. Nor can such a right be inferred from Fed.R.Crim.P. 5(c). The Federal Rules of Criminal Procedure do not apply to

proceedings under the Federal Juvenile Delinquency Act insofar as they are inconsistent with the procedures established therein. *See* Fed.R.Crim.P. 54(b)(5); *United States v. Morales,* 233 F.Supp. 160, 164 (D.Mont.1964). In any event, any right to a preliminary examination which Allen might have had under Rule 5(c) was eliminated, by the terms of that rule, when the prosecutor filed an information in district court prior to Allen's arrest.

11. Citing the fact that "[p]retrial detention is an onerous experience, especially for juveniles," the Sixth Circuit has held *Gerstein* to be applicable to the pretrial detention of juveniles taken into custody for alleged violations of the law. *Moss v. Weaver,* 525 F.2d 1258, 1259–1260 (5th Cir. 1976). *See also Cox v. Turley,* 506 F.2d 1347, 1353 (6th Cir. 1974); *Brown v. Fauntleroy,* 143 U.S.App.D.C. 116, 117–119, 442 F.2d 838, 839–841 (1971); *Cooley v. Stone,* 134 U.S.App.D.C. 317, 414 F.2d 1213 (1969).

requisite to extended restraint of liberty following arrest. *Gerstein v. Pugh, supra* at 114, 95 S.Ct. 854. Since a warrantless arrest followed by detention pending trial under a prosecutor's information does not afford an accused a judicial determination of probable cause, prolonged pretrial detention under those circumstances was held to be violative of the Fourth Amendment. *Id.* at 116–119, 95 S.Ct. 854. In the instant case, Allen was arrested under a warrant issued by a federal magistrate. Since the issuance of that warrant required a judicial determination of probable cause, the requirements of the Fourth Amendment were met. *See Gerstein v. Pugh, supra* at 116 n. 18, 95 S.Ct. 854.

### III.

Finally, Allen contends that the evidence was insufficient to support the findings of the trial court. We have reviewed the evidence and find it to be clearly sufficient to support the trial court's findings.

The judgment is affirmed.