**UNITED STATES of America, Appellee,**

v.

**JUVENILE MALE, (Dist.Ct. No. 90-0012M-01), Appellant.**

**UNITED STATES of America, Appellee,**

v.

**JUVENILE MALE, (Dist.Ct. No. 90-0013M-01), Appellant.**

Nos. 90-1754, 90-1755.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1990.

Decided Jan. 16, 1991.

Robert E. Hough, Jr., Fort Smith, Ark., for juvenile male # 12.

Bennett S. Nolan, Fort Smith, Ark., for juvenile male # 13.

William M. Cromwell, Ft. Smith, Ark., for appellee.

Before FAGG and BEAM, Circuit Judges, and WOODS,* District Judge.

BEAM, Circuit Judge.

In these *related matters*, two juvenile males, P.P. (No. 90–1754) and J.P. (No. 90–1755), appeal the district court's orders transferring them from juvenile to adult court for criminal prosecution pursuant to the Juvenile Justice and Delinquency Pre-

vention Act, 18 U.S.C. § 5032 (1988). Both P.P. and J.P. contend, among other things, that the district court's factual findings were insufficient to support its decisions to transfer them. We do not reach this question, but, instead, dismiss for lack of jurisdiction.

## I. BACKGROUND

A juvenile charged with an act of juvenile delinquency [1] can be proceeded against in federal court only if the Attorney General or his delegate certifies (1) that an appropriate state court does not have, or refuses to exercise, jurisdiction over the juvenile, (2) that the state does not have adequate programs and services to provide for juveniles, or (3) that the offense charged is a crime of violence that is a felony or is among certain specified drug offenses and there is a substantial federal interest warranting the exercise of federal jurisdiction. *Id.* Here, the United States Attorney for the Western District of Arkansas, as the delegate of the Attorney General, invoked the jurisdiction of the district court by certifying that the offenses with which P.P. and J.P. were charged were crimes of violence.

Once the district court's jurisdiction is established, section 5032 provides that the juvenile is to be proceeded against as a juvenile except under certain circumstances.[2] The juvenile can be transferred

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. An act of juvenile delinquency "is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031 (1988).

2. Section 5032 provides, in part:

A juvenile alleged to have committed an act of juvenile delinquency ... shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs

of juveniles, or (3) the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

If an alleged juvenile delinquent is not surrendered to the authorities of a State or the District of Columbia pursuant to this section, any proceedings against him shall be in an appropriate district court of the United States.... The Attorney General shall proceed by information, and no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided below.

A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he

for criminal prosecution as an adult at his request or upon the government's motion and the court's finding that the interest of justice so demands. The statute requires that the district court consider and make findings in the record on six factors when making the interest of justice determination: "the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; [and] the availability of programs designed to treat the juvenile's behavioral problems." *Id.*

Here, the criminal complaint filed with the district court alleged that P.P. conspired to travel in interstate commerce for the purpose of committing a murder in violation of 18 U.S.C. § 371 (1988). J.P. was charged with travelling in interstate commerce with the intent to commit murder resulting in personal injury and with conspiracy to do the same in violation of 18 U.S.C. §§ 1958(a), 371 (1988). These were the alleged acts of juvenile delinquency supporting the government's action under section 5032. Based upon these complaints, the government's motion to transfer, and evidence received at the transfer

hearing, the district court determined that transferring both juveniles was in the interest of justice.

## II. DISCUSSION

■ Before we can consider whether the transfers were in the interest of justice, we must determine that we have jurisdiction over this matter.[3] As indicated, jurisdiction under section 5032 was invoked by the United States Attorney's certification that P.P. and J.P. had committed crimes of violence. If, as P.P. contends, the alleged conspiracy is not a crime of violence, then the district court may have lacked jurisdiction. Moreover, failure to comply with any of the preliminary requirements of section 5032 may create a jurisdictional defect. While P.P. did not object to the jurisdiction of the district court, the issue of subject matter jurisdiction is properly addressed, even on appeal, *sua sponte.* *See Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968 (8th Cir.1990).

Our review of the adequacy of the certification depends on two related, preliminary issues. We must determine both whether the district court, in the first instance, and this court, on appeal, have the power to review the certification and whether a proper certification is a prerequisite to jur-

---

has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile fifteen years and older alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence ..., criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice....

Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

3. P.P., at oral argument, raised the contention that conspiracy is not a transferrable offense under section 5032. *See In re Sealed Case (Juvenile Transfer),* 893 F.2d 363, 368 (D.C.Cir.1990) (since conspiracy is not a transferrable offense, district court erred in considering acts in furtherance of a conspiracy, in addition to the alleged drug offenses, when evaluating the nature of the alleged offense). He contends that section 5032 provides only for the transfer of crimes of violence and certain specified drug offenses. Because conspiracy is not a crime of violence and is not one of the specified offenses, it is not transferrable. J.P. did not join in this argument because he allegedly violated section 1958(a), clearly a crime of violence, in addition to the conspiracy allegation. P.P. did not raise this issue either before the district court or in his brief to this court. Generally, we do not consider arguments presented for the first time on appeal. However, we review P.P.'s contention on a more basic level. If conspiracy is not a crime of violence, then the government's certification was not sufficient to confer jurisdiction under section 5032.

isdiction under section 5032. We hold that the certification is subject to judicial review for compliance with section 5032 and that a certification is necessary to confer federal jurisdiction.

■ This circuit has not directly addressed whether a certification is subject to judicial review. Cf. *United States v. Allen,* 574 F.2d 435, 438–39 (8th Cir.1978) (certification that state court is without jurisdiction, without reference to tribal jurisdiction, is adequate). In fact,. only two courts of appeals, the Second Circuit and the Eleventh Circuit, have addressed this question.[4] In *United States v. Vancier,* 515 F.2d 1378 (2d Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 107, 46 L.Ed.2d 82 (1975), the Second Circuit held that it could not review the certification. Vancier contended that, although the government correctly certified that the New York State Juvenile Court did not have jurisdiction over him, he was subject to the jurisdiction of an appropriate court, the New York City Criminal Court. The government countered that the Youthful Offender Program in the city court was not an adequate substitute for the state juvenile court. In finding that the certification was not subject to judicial review, the court noted that the Act contains no provision for judicial review of the Attorney General's certification and no standards by which to evaluate whether an appropriate court has jurisdiction or whether adequate programs and services exist. *Id.* at 1380. Further, the court recognized several instances where the executive branch is granted unreviewable discretion in law enforcement matters: the grant of immunity to compel testimony, certification that a proceeding is against someone believed to have participated in organized crime, and certification that an interlocutory appeal is not taken solely for delay. *Id.* at 1381. Thus, the court held that the certification "falls into the category of unreviewable determinations to be made, in this instance, by the Attorney General." *Id.*

The Eleventh Circuit, in *United States v. C.G.,* 736 F.2d 1474, 1477–78 (11th Cir. 1984), relying on *Vancier,* held that an appellate court "may not inquire into the correctness of the statements made in the certification. Indeed, such an inquiry is appropriate only when the juvenile has established bad faith on the part of the government." The court did not preclude review of a certification to insure compliance with section 5032. "[T]he court may reject a certification where the certifying party is not a proper delegate of the Attorney General, where the certification is not filed in a timely fashion, or where the certification fails to state that the state courts lack or decline jurisdiction or lack appropriate juvenile services." *Id.* at 1477 (citations omitted). Given proper compliance with section 5032, the court declined to review the factual accuracy of the statement that the Alabama state courts did not have jurisdiction over C.G. *Id.*

Neither of the above cases persuades us that we cannot review the certification here. In *Vancier,* the court's decision was based on a lack of standards by which to review the correctness of the certification and the fact that the statute, while qualifying the government's prosecutorial discretion, does not grant the court the power to decide which juvenile cases should be brought in federal court. *Vancier,* 515 F.2d at 1380–81. And, in *C.G.,* the court recognized that it could review a certification for compliance with section 5032. *C.G.,* 736 F.2d at 1477. Here, no question exists as to the standard we should apply to determine whether the crime alleged is one of the crimes that Congress has determined merits the intervention of the federal courts. Further, we are doing nothing more than reviewing the certification for compliance with section 5032—i.e., whether the United States Attorney certified that one of the crimes specified by Congress had been alleged.

While this court may not have the power to guide a federal prosecutor's discretion,

---

4. The Fourth Circuit expressly declined to decide whether a certification is subject to judicial review after finding that the certification at issue was in accordance with section 5032. *United States v. Hill,* 538 F.2d 1072, 1077 (4th Cir. 1976).

we must insure that the exercise of that discretion is within the confines of section 5032. Federal court jurisdiction over juveniles who commit acts that if committed by an adult would violate federal law is limited. Thus, we hold, in accordance with the plain language of section 5032, that filing a certification in compliance with section 5032 is a jurisdictional requirement.

■ This court has held that compliance with the certification requirement of section 5032 is necessary to properly invoke federal jurisdiction. In *Allen*, 574 F.2d at 438, the juvenile asserted that the certification was invalid because it did not address the availability of jurisdiction in the tribal court.[5] The court held that, while certification is necessary to invoke jurisdiction under section 5032, the plain language of the statute requires certification only in regard to the jurisdiction of the state courts and not the tribal court. *Id.* at 438–39. In accord with *Allen*, we reaffirm that a certification in compliance with section 5032 is necessary to invoke federal jurisdiction under that section. *See United States v. Brian N.*, 900 F.2d 218, 222–23 & n. 8 (10th Cir.1990) (noting that jurisdictional prerequisites under section 5032 include certification requirement). *Cf. United States v. Gonzalez–Cervantes*, 668 F.2d 1073, 1077–78 (9th Cir.1981) (filing of certification that appears accurate on its face is required before proceeding under section 5032; filing of accurate certification, however, is not a jurisdictional requirement). Our holding is based upon the clear mandate of section 5032, which provides that "[a] juvenile ... shall not be proceeded against in any court of the United States" without a certification from the Attorney General.

■ We now review whether this certification was in compliance with section 5032. As indicated, the government filed complaints against P.P. and J.P. and certified that both juveniles had committed crimes of violence. While section 5032 does not define crime of violence, the phrase is defined in 18 U.S.C. § 16 (1988).[6] Section 16 provides two definitions of crime of violence. Only the second applies here.[7] It provides that "any ... offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" is a crime of violence. *Id.* § 16(b).

As noted, the D.C. Court of Appeals has indicated that conspiracy is not a transferrable offense under section 5032. *In re Sealed Case (Juvenile Transfer)*, 893 F.2d 363 (D.C.Cir.1990). In *In re Sealed Case*, the government initially alleged a conspiracy to distribute drugs as the act of juvenile delinquency. After the district court informed the government that conspiracy was not a transferrable offense, the government dropped the conspiracy allegation and alleged a substantive drug offense. The district court, however, considered the unalleged conspiracy when it evaluated the nature of the alleged offense during transfer proceedings. The D.C. Circuit held that the district court erred in granting the government's transfer motion because its "nature of the offense" evaluation included consideration of the unalleged

---

**5.** In *Allen,* the court also discussed the basis of jurisdiction under the Major Crimes Act, 18 U.S.C. § 1153 (1988). The court held that the underlying offense, and not the provisions of section 5032, established jurisdiction under the Act. In the absence of an underlying offense within the scope of section 1153, no allegation of juvenile delinquency would have been possible. Thus, the court rejected the juvenile's claim that an allegation under section 5032 could not support an action based on a violation of section 1153. *Allen,* 574 F.2d at 437.

**6.** Section 16 and the amendment to section 5032 which added crimes of violence as certifiable offenses were part of the Comprehensive Crime Control Act of 1984. Section 16 is referred to in the legislative history of the amendment to section 5032. S.Rep. No. 225, 98th Cong., 2d Sess. 389 & n. 7, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3529 & n. 7.

**7.** The first definition in section 16 provides that "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" is a crime of violence. 18 U.S.C. § 16(a). This definition is not applicable here because the use, attempted use, or threatened use of physical force are not elements of the charged conspiracy.

conspiracy to distribute drugs. *Id.* at 368–69.

The D.C. Circuit stated that conspiracy to distribute drugs is not one of the transferrable offenses set forth in section 5032. However, the court did not address whether it is a crime of violence, which would be a transferrable offense. P.P. contends that *In re Sealed Case* stands for the proposition that no conspiracy is a crime of violence. We decline, however, to read it so broadly. At most, *In re Sealed Case* holds that conspiracy to commit a nonviolent crime, *see United States v. Cruz*, 805 F.2d 1464, 1475 (11th Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987) (possession with intent to distribute narcotics is not a crime of violence), is not a crime of violence. *In re Sealed Case*, then, does not deal with the question before us—whether conspiracy to commit murder is a crime of violence.

At least one court of appeals has concluded that a conspiracy to commit a crime of violence is itself a crime of violence. In *United States v. Chimurenga*, 760 F.2d 400 (2d Cir.1985), the Second Circuit held that conspiracy to commit armed robbery is a crime of violence under The Bail Reform Act, 18 U.S.C. § 3142 (1988). Without questioning that armed robbery is a violent crime, the court focused on language in section 3156(a)(4)(B) [8] and held:

> The existence of a criminal grouping increases the chances that the planned crime will be committed beyond that of a mere possibility. Because the conspiracy itself provides a focal point for collective criminal action, attainment of the conspirators' objectives becomes instead a significant *probability*. Thus, ascribing an ordinary meaning to the words, a conspiracy to commit an act of violence is an act involving a "substantial risk" of violence.

*Id.* at 404 (citations omitted). The court held that conspiracy to commit armed robbery is a crime of violence within section 3156(a)(4)(B).

The *Chimurenga* court's analysis is bolstered by the Eleventh Circuit's holding that certain drug trafficking crimes are not felonies that, by their nature, involve a substantial risk of the use of physical force. *Cruz*, 805 F.2d 1464. Cruz and two other individuals were convicted of using or carrying a firearm while committing crimes of violence. *See* 18 U.S.C. § 924(c) (1988). The predicate offenses were organizing a continuing criminal enterprise, conspiracy to possess cocaine with intent to distribute, and possession of cocaine with intent to distribute. The court rejected appellant's contention that the statutory language "by its nature" requires that the use of force be an element of a crime of violence. Appellant's contention ignored the statutory language "may" and "substantial risk" which indicated that violence need not be an element of the underlying offense. Such an interpretation would make the provisions of section 16(a) redundant. The court also rejected the government's contention that the court should examine each individual offense, as committed, to determine whether it actually involved a substantial risk of harm, since to do so would give no meaning to the phrase "by its nature." *Cruz*, 805 F.2d at 1468–69. Thus, the court determined that section 16(b) is ambiguous.

After reviewing the legislative history of section 924(c) to ascertain the congressional intent behind the language crime of violence, the court determined that the underlying offenses were not crimes of violence. *Id.* at 1470–73. In so doing, the court recognized that section 16(b) is not devoid of meaning. As an example, the court referred to *Chimurenga*. Conspiracy to commit a crime of violence, which requires an agreement and an overt act, does not come within section 16(a), but does, "by its nature, create a substantial risk of violence. This would be true of any conspiracy to commit a crime of violence." *Id.* at 1474 n. 11.

---

**8.** Section 3156 provides that a crime of violence is an "offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B) (1988).

We have no doubt that conspiracy to commit a violent crime is a crime of violence as contemplated by sections 16(b) and 5032. Travelling in interstate commerce for the purpose of committing a murder is a felony "that, by its nature, involves a substantial risk that physical force against the person ... may be used in the course of committing the offense." 18 U.S.C. § 16(b). As indicated in *Chimurenga,* the likelihood that the planned crime will be committed becomes more probable when a conspiracy exists. *Chimurenga,* 760 F.2d at 404. Clearly, a conspiracy to travel in interstate commerce to commit murder creates a substantial risk that physical force may be used.

■ Although we conclude that the offense with which P.P. is charged is a crime of violence under section 5032, the inquiry cannot end at that point. The government failed to comply with at least two other requirements in relation to both P.P. and J.P., each of which, we believe, is jurisdictional. Most notably, the certifications filed in both cases failed to state "that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C. § 5032. We note again that the statute, immediately following the language on certification states, "[i]f the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of [the] State." *Id. But see United States v. Dennison,* 652 F.Supp. 211, 213 (D.N.M.1986) (failure to certify that substantial federal interest existed in the case not fatal to jurisdiction where information filed the same day revealed gravity of offense and that federal jurisdiction was exclusive).

■ Further, the record indicates that the district court received neither prior juvenile court records nor certifications from the clerk of the juvenile court that prior records did not exist or were unavailable. Section 5032 provides:

Any proceedings against a juvenile under this chapter or as an adult shall not be commenced until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

In *Brian N.,* 900 F.2d at 222–23, the Tenth Circuit held that the filing of juvenile court records is a jurisdictional prerequisite. Section 5032 specifically prohibits proceeding against a juvenile in federal court until such records are filed. *Id.*

The jurisdictional aspects of filing records or an adequate certification are equally applicable here. We agree with the Tenth Circuit that no proceeding may be commenced against a juvenile under section 5032 until the juvenile records or certification of the appropriate authority are received by the district court.

In summary, section 5032 has specific jurisdictional prerequisites and compliance with these requirements is necessary for federal court jurisdiction to exist. Here, the government failed to comply with the statute and, thus, failed to invoke federal jurisdiction. However, our holding does not permit J.P. and P.P. to walk away from prosecution in federal court should the United States Attorney choose to proceed as required by statute. Neither appellant has yet "attained his twenty-first birthday." *See* 18 U.S.C. § 5031. It is also likely that each can be prosecuted in state court should that now be a more desirable route to travel.

## III. CONCLUSION

Because of the jurisdictional defects, we cannot review the merits of the district court's transfer decisions, which were made without specific factual findings on all of the six factors set forth in the statute. The appeals are dismissed.