

Villanova University School of Law

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-13-1997

# Impounded

Precedential or Non-Precedential:

Docket 96-7545

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Impounded" (1997). *1997 Decisions.* Paper 190.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/190

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 13, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-7545

IMPOUNDED
(Juvenile I.H., Jr., Appellant)

On Appeal From the District Court
the Virgin Islands
(Division of St. Thomas and St. John)
(D.C.CRIM.. Nos. 96-86 and 96-91)

Argued: December 10, 1996

Before: SCIRICA, NYGAARD and McKEE,
Circuit Judges.

(Filed August 13, 1997)

KWAME O. MOTILEWA, ESQ.
  (ARGUED)
#1 Regjerings Gade
Third Floor
P.O. Box 304938
St. Thomas
United States Virgin Islands 00803

Attorney for Appellant

JAMES A. HURD, JR., ESQUIRE
United States Attorney
STANLEY L. de JONGH, ESQUIRE
  (ARGUED)
Assistant United States Attorney
5500 Veterans Drive
Suite 260
Charlotte Amalie
United States Virgin Islands 00803

Attorneys for Appellees

**OPINION OF THE COURT**

McKEE, Circuit Judge.

I.H., a juvenile male, appeals from the district court's
order transferring him from juvenile to adult status for
criminal prosecution pursuant to Section 5302 of the
Juvenile Delinquency Act ("JDA"), 18 U.S.C. § 5032. I.H.
contends that the district court did not have jurisdiction
over the transfer procedure, and that the district court's
factual findings were insufficient to support its decision to
transfer him. We agree that the district court lacked
jurisdiction to begin the transfer procedure.1 Therefore, it is
not necessary to reach the sufficiency of the court's factual
findings.

**I.**

I.H. was born on November 6, 1978. On October 18,
1995, when I.H. was 16 years old, he, and two adults,
Duncan Connor, Jr., and David Thompson, kidnaped at
gunpoint Leslie and David Kalov by forcibly taking control

─────────────────────────────────────────────

1. Even though we hold that the district court never acquired jurisdiction
over I.H., we nevertheless have jurisdiction over the appeal from the
district court's transfer order. See United States v. Doe, 13 F.3d 302 (9th
Cir. 1993) ("We conclude that although this court has jurisdiction over
the appeal, the district court lacked jurisdiction to commence juvenile
delinquency proceedings against the minor").

2

of their car and driving them to Little Magens Bay, St. Thomas, United States Virgin Islands. I.H. was armed with a handgun, and sat in the back seat of the car with the gun trained on the Kalovs who were seated next to him. I.H. fired one shot during the incident but neither of the Kalovs was hit, although the car's windshield was shattered. After arriving at Little Magens Bay, I.H. and the two adult perpetrators robbed the Kalovs, then raped and sodomized Leslie Kalov.

About four weeks later, on November 15, 1995, I.H., who had just turned seventeen years old, committed an armed robbery of the Emerald Lady jewelry store on St. Thomas, United States Virgin Islands with an accomplice. I.H. was subsequently identified as the leader of the duo who first entered the store and brandished a gun in the face of the store's employees. The accomplice was still at large when this appeal was taken.

On March 18, 1996, I.H. was arrested and charged by information with carjacking in violation of 18 U.S.C. § 2119, and with the local offense of aggravated rape in violation of 14 V.I.C. § 1700(c).2 Three days later, on March 21, 1996, I.H., was arrested for the November 15, 1995, armed robbery of the jewelry store and charged with a Hobbs Act violation pursuant to 18 U.S.C. § 1951, and possession of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1). He was also charged with local offenses, including armed robbery and first degree assault in violation of 14 V.I.C. §§ 1862(2) and 295, respectively.

On March 29, 1996, the United States Attorney filed a petition pursuant to Section 5302 of the JDA to transfer the carjacking and aggravated rape charges to the federal district court in order to prosecute I.H. as an adult. On April 3, 1996, a similar § 5302 petition was filed in the Hobbs Act and armed robbery case. The district court held

_____

2. Subsequently, on August 8, 1996, the United States Attorney superseded the information to include additional local offenses committed during the carjacking and aggravated rape, viz., kidnaping to commit rape in violation of 14 V.I.C. § 1052, armed robbery in violation of 14 V.I.C. § 1862 and first degree assault in violation of 14 V.I.C. § 295.

hearings on both petitions on April 4 and 11, 1996, and on August 30, 1996, the government's petitions to transfer both cases for adult prosection were granted. This appeal followed.[3]

## II.

Section 5032 of the JDA establishes the procedural requirements for transferring a juvenile[4] from state authorities to a federal district court for criminal prosecution as an adult. The procedure has two parts. The first part is the certification procedure, which has two separate certification requirements. First, there is the "need certification" provision under which the Attorney General certifies "there is a need for proceedings to take place in federal rather than state court." United States v. Doe, 19 F.3d 302, 303 (9th Cir. 1993). Under this provision, the Attorney General[5] must certify to the district court that:

(1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs or services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense

_____

3. The order from which I.H., appeals is not "final" for the purposes of 28 U.S.C. § 1291; nonetheless, we have appellate jurisdiction pursuant to the collateral order doctrine. See In re A.M., 34 F.3d 153, 155-56 (3d Cir. 1994).

4. Under the Juvenile Act, a " `juvenile' is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday. . . ." 18 U.S.C. § 5301. Juvenile delinquency "is the violation of a law of the United States committed by a person prior to his eighteenth birthday. . . ." Id.

5. Under regulations adopted pursuant to 18 U.S.C. § 5032, the Attorney General delegated her authority to the Assistant Attorney General in charge of the Criminal Division and his Deputy Assistant Attorneys General. 28 C.F.R. § 0.57. The Assistant Attorney General is authorized to redelegate authority to United States Attorneys. United States v. Doe, 98 F.3d 459, 460-61 (9th Cir. 1996).

4

[enumerated in this paragraph], and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032 ¶ 1. Second, there is the "record certification" provision, which states:

Any proceedings against a juvenile shall not be commenced until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

Id. at ¶ 10.

Once the certification requirements are met, the second part of the transfer procedure can begin. The United States Attorney can move in the federal district court to transfer the juvenile to be tried as an adult. Section 5302 provides two methods for transfer -- permissive and mandatory. A permissive transfer can be made if the district court "finds, after hearing, [that] such transfer would be in the best interest of justice." Id. at ¶ 4. To determine whether a transfer "would be in the best interest of justice," the district court is directed to consider evidence of the following factors:

the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

Id. at ¶ 5. In considering the nature of the offense, the district court is required to "consider the extent to which the juvenile played a leadership role in an organization, or otherwise influenced other persons to take part in criminal activities, involving the use or distribution of controlled substances or firearms." Id.

A mandatory transfer shall be made if

5

[A] juvenile who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has an element thereof the use, attempted use, or threatened use of physical force against the person or another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense, or would be [an offense specifically enumerated], and who has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction has existed. . . .

Id. at ¶ 4.

Here, the government recites that it filed the "requisite certification" in accordance with Section 5302 of the JDA in each of the juvenile's cases that it sought to transfer to district court for adult criminal prosecution. See Appellee's Br. at 3–4. However, the government admits that it failed to comply with the record certification requirement of Section 5302. Id. at 9. We assume that by reciting that it filed the "requisite certification," the government means that it filed the need certification. I.H. does not allege that the government did not file the need certification. Nonetheless, the government argues that its "technical failure[to comply with the record certification] should not create a fatal blow to the District Court's exercise of jurisdiction" because the district court was verbally, and informally, informed that I.H. did not have a prior juvenile record. Id.

On March 19, 1996, at a detention hearing following I.H.'s arrest on the carjacking and aggravated rape charges, the United States Magistrate Judge entered an order directing the Family Division of the Territorial Court of the Virgin Islands to supply the United States Probation Office with "any and all juvenile adjudication information, criminal indictment and court contacts" concerning I.H. Supp. Ap. at 1A. The Territorial Court did not comply with that order. The government's appendix on appeal contains a copy of a letter from the Clerk of the Territorial Court to

6

the United States Probation Office, with a carbon copy to the magistrate judge, which recites that a search of the court's "criminal and juvenile records revealed that . . . [I.H., has] no record with this court." Supp. Ap. at 1. However, that letter contains neither a certification by the clerk of the court nor an imprint of an official seal. Further, the letter is dated November 25, 1996, almost three months after the district court's order transferring I.H. to federal district court for prosecution as an adult. However, according to the government, the United States Probation Service contacted the Family Division of the Territorial Court and was informed that I.H., had no prior juvenile record. The government asserts that it verbally communicated that information to the district court prior to the district court's decision on its transfer motions. In addition, the government claims that the Virgin Islands Department of Human Services confirmed in writing to the district court that the Department had no prior contact with I.H.

Thus, the government is arguing both that it made a good faith effort to comply, and did substantially comply, with the record certification requirement. Accordingly, it asks us to overlook that it did not comply with the letter of the statute.

I.H. argues that strict compliance with the record certification provision of § 5032 is a jurisdictional prerequisite without which the district court cannot transfer him for criminal prosecution as an adult. He contends that the government's failure to furnish the record certification deprives the district court of jurisdiction.

Our inquiry begins, as it must, with the language of the statute. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself."). Section 5032's record certification requirement reads:

 A juvenile shall not be transferred to adult prosecution nor shall a hearing be held under section 5037 (disposition after a finding of juvenile

7

delinquency) _until_ any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

18 U.S.C. § 5032 ¶ 10 (emphasis added). The language of the statute could not be clearer. It plainly states that a juvenile "shall not be transferred" for prosecution as an adult "until" the juvenile's prior court records are delivered to the district court or until the clerk of the juvenile court has certified in writing that the juvenile has no such record.

The courts of appeals that have considered this issue are in near unanimous agreement that the record certification requirement is a jurisdictional prerequisite in a transfer proceeding. _See_, _e.g._, _United States v. Wong_, 40 F.3d 1347, 1369–70 (2nd Cir. 1994); _United States v. Parker_, 956 F.2d 169, 170 (8th Cir. 1992); _United States v. Juvenile Male_, 923 F.2d 614, 620 (8th Cir. 1991); and _United States v. Brian N._, 900 F.2d 218, 222–23 (10th Cir. 1990).

The record certification requirement is not met if the government makes absolutely no effort to comply with the record certification requirement, _United States v. Juvenile Male_, 923 F.2d at 620, or if the government knows of the existence of juvenile records but makes no effort to provide them to the district court. _United States v. Brian N._, 900 F.2d at 223. In such cases, the district court has no jurisdiction to begin the transfer procedure. The government relies upon _United States v. Parker_, _supra_, to argue that a good faith effort, or substantial compliance, is sufficient to confer jurisdiction. There, the court held that a letter from a state court judge and letters from three assistant district attorneys, all of which stated that no charges had been filed against the juvenile in their respective counties, satisfied the record certification requirement of § 5032. The court said: "[W]e decline to stand on technicalities." 956 F.2d at 170. However, the court's analysis is not so compelling as to persuade us that we can ignore the clear language of the statute by labeling it a "legal technicality". Moreover, _United States v. Juvenile Male_ and _United States v. Parker_ concern the government's

8

efforts to transfer the same juvenile, "P.P.," to adult prosecution in a contract murder conspiracy. In Juvenile Male, the court had found lack of jurisdiction because the government made no effort to comply with the record certification provision. Accordingly, the court's later decision in Parker not "to stand on technicalities" may well have been driven more by frustration at the government's inability or unwillingness to comply with the record certification provision than by a reasoned analysis of the statute. Interestingly, in the earlier case where the government failed to comply with the certification requirements to transfer P.P. to be tried as an adult, the court ruled there was no jurisdiction over the juvenile stating, "we reaffirm that a certification in compliance with section 5032 is necessary to invoke federal jurisdiction under that section." United States v. Juvenile Male, 923 F.2d at 618. The court then went on to state "[i]n summary, section 5032 has specific jurisdictional requirements and compliance with their requirements is necessary for federal court jurisdiction to exist. . . . the government failed to comply with the statute and, thus, failed to invoke federal jurisdiction." Id. At 620. In any event, we will not effect a judicial amendment of the statute by reading in language that would allow for the exception that the government urges.

Despite the decision in United States v. Parker, we conclude that the language of the statute requires strict and literal compliance with the record certification requirement. Absent some evidence of contrary congressional intent, we must assume that the statute means what it says. A juvenile "shall not be transferred to adult prosecution . . . until" the district court receives any prior juvenile court records or the clerk of the juvenile court certifies that there are no such records. This statute is not so ambiguous as to require us to resort to legislative history to decide its meaning. Smith v. Fidelity Consumer Discount Co., 898 F.2d 907, 910 (3d Cir. 1990)("[S]tatutory construction should halt at such time as the court determines the text at issue to be plain and unambiguous"), citing Rubin v. United States, 449 U.S. 424, 430 (1981). Nevertheless, we note that the legislative history is

9

consistent with our analysis, and is another reason why we remain unpersuaded by U.S. v. Parker.

The record certification requirement was added to § 5032 in 1984, as part of the Comprehensive Crime Control Act of 1984. See Pub. L. No. 98-473, § 1201(c), 98 Stat. 1837, 2150 (1984). In describing the provision, the Senate Report commented:

Too often, however, juvenile proceedings are undertaken without the benefit of such information. This new paragraph stresses that these records be obtained beforehand whenever possible. The Committee intends, however, that this new provision's requirements are to be understood in the context of a standard of reasonableness. Thus, if reasonable efforts to obtain a juvenile's records have been made, a certification of their unavailability is permissible. Also, the Committee intends that this new requirement be applied with a degree of flexibility so that stages of proceedings to which such records are not relevant are not delayed pending arrival of the records. Thus, it is appropriate that a hearing concerning a transfer for prosecution await the arrival of a juvenile's court records, since they are highly relevant to the transfer decision.

S.Rep. No. 225, 98th Cong., 2d Sess. 391 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3531 (emphasis added). Although it could be argued that the Report's concern for "reasonableness" and "flexibility" support the government's position here, and the holding in Parker, the context of that language requires a contrary interpretation. The Report simply states that the actual records need not be produced following "reasonable" efforts to find them so long as "a certification" of their unavailability is tendered. Similarly, the concern for "flexibility" is addressed, not by relaxing the jurisdictional prerequisite, but by insuring that the records are not required until the appropriate stage of the proceedings.

Accordingly, neither the clear language of the statute, nor its legislative history, allows for substantial, good faith, but inadequate compliance with the required record

10

certification. Here, the jurisdictional prerequisites of § 5023 were not met and the district court was therefore without jurisdiction to transfer I.H. to district court for criminal prosecution as an adult. Accordingly, the district court's August 30, 1996, order transferring I.H. for adult criminal prosecution is without force and effect.

Although the district court's transfer order has no effect, I.H. does not automatically escape adult prosecution in federal court. The United States Attorney is still free to proceed under § 5032 because I.H. has not yet "attained his twenty-first birthday." See 18 U.S.C.§ 5031 and United States v. Juvenile Male, 923 F.2d at 620.

**III**.

For the above reasons, we will vacate the August 30, 1996, order transferring I.H., to the district court for criminal prosecution as an adult and remand for further proceedings.

Proceedings under the JDA begin with the filing of an information. 18 U.S.C. § 5032 ¶ 3. However, § 5032 does not state when the record certification must be provided to the district court. The Tenth Circuit has held that the record certification must be filed when the information is filed. United States v. Brian N., 900 F.2d at 223 ("We believe that the statute mandates the filing of such records at the commencement of the proceedings -- the filing of the information."). However, the Second Circuit, while stressing that the government "should always endeavor to supply the district court with official juvenile records prior to the filing of an information," has found that the government's furnishing of a certified copy of the juvenile's prior record after the transfer motion was filed but immediately prior to the district court's decision to order the transfer was timely. United States v. Wong, 40 F.3d at 1370.

The issue here, however, is not the precise timing of the filing of the record certification, but whether the government filed the record certification as required for jurisdiction over a juvenile. Because we have found that the requirement was not met in this case, we offer no opinion on the question of what stage prior to the court obtaining

11

jurisdiction over a juvenile the record certification must be filed.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

12