TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-703 |
| of | : | |
| | : | December 5, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE JAMES L. BRULTE, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

May a California innkeeper electronically record all incoming telephone conversations so that a voiceprint may be obtained in the event a bomb threat is made?

CONCLUSION

A California innkeeper may not electronically record all incoming telephone conversations so that a voiceprint may be obtained in the event a bomb threat is made. However, an individual telephone conversation that contains a bomb threat may be recorded.

ANALYSIS

We are advised that bomb threats made by telephone callers to hotels and motels have become an increasing problem for innkeepers throughout the state. We are asked whether, as a means of preserving evidence that may be used to identify and prosecute those who make such threats, an innkeeper may electronically record all incoming telephone calls. Specifically, may innkeepers use a recording device similar to an aircraft's cockpit voice recorder in which the tape would be examined or replayed only in the event a threat were received? Otherwise, the tape would be erased by recording the next conversation. No calls to guests would be recorded, and no warning device would advise callers of the recording. We conclude that such a procedure recording all incoming telephone calls would violate California law. However, an individual telephone conversation containing a bomb threat may legally be recorded.

The Legislature has enacted a comprehensive statutory scheme, the Privacy Act (Pen. Code, §§ 630-637.6), **Footnote No. 1** governing and generally prohibiting the "invasion of privacy," including the recording of telephone conversations. Section 630 states:

"The Legislature hereby declares that advances in science and technology have led to

the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

"The Legislature by this chapter intends to protect the right of privacy of the people of this state.

"The Legislature recognizes that law enforcement agencies have a legitimate need to employ modern listening devices and techniques in the investigation of criminal conduct and the apprehension of law-breakers. Therefore, it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter."

Section 631 implements these legislative policies by providing:

"(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both a fine and imprisonment in the county jail or in the state prison. . . .

"(b) This section shall not apply (1) to any public utility engaged in the business of providing communications services and facilities, or to the officers, employees or agents thereof, where the acts otherwise prohibited herein are for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility, or (2) to the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility, or (3) to any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility. . . ."

Section 631 is supplemented by prohibitions against the interception of cellular telephone communications (§ 632.5), cordless telephone communications (§ 632.6), and the recording of such communications (§ 632.7).

While the foregoing statutes deal with the interception of telephone conversations (generally referred to as "wiretapping"), the Legislature has also prohibited the use of electronic equipment to eavesdrop on any confidential communications. Section 632 states:

"(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph,

telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. . . .

"(b) The term `person' includes an individual, business association, partnership, corporation, limited liability company, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication.

"(c) The term `confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) This section does not apply (1) to any public utility engaged in the business of providing communications services and facilities, or to the officers, employees or agents thereof, where the acts otherwise prohibited by this section are for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility, or (2) to the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility, or (3) to any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility. . . ."

The foregoing statutes constitute a general prohibition on wiretapping and eavesdropping. They would prohibit the use of an electronic device to record incoming telephone calls to a hotel or motel unless (1) such calls are not deemed to be confidential or (2) there is an exemption available for innkeepers. We will consider each of these possibilities in turn.

In *Ribas* v. *Clark* (1985) 38 Cal.3d 355, the court ruled that listening to a telephone conversation on an extension telephone without the knowledge of the caller violated section 631. The court stated:

". . . the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent. [Citations.] While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device. [Citation.]

"As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication -- the right to control the nature and extent of the firsthand dissemination of his statements. [Citation.] Partly because of this factor, the Privacy Act has been read to require the assent of all parties to a communication before another may listen. [Citation.]" (*Id.*, at pp. 360-361.) **Footnote No. 2**

A similar conclusion was reached by the court in *Frio* v. *Superior Court* (1988) 203 Cal.App.3d 1480, where one party to a telephone conversation, without the knowledge or consent of the other party, used a telephone answering machine to record the conversation. The court observed:

"The legislative history of section 632 is replete with references to the Legislature's intent to strengthen then existing law by `prohibiting wiretapping or "electronic eavesdropping" *without the consent of all parties to the communication which is being tapped or overheard.*' (Italics added.) [Citations.]" (Fn. omitted.)

Of course, consent to the recording of the conversation may be implied. In *O'Laskey* v. *Sortino* (1990) 224 Cal.App.3d 241, the court concluded that a telephone conversation could be recorded by a caller who identified himself as the producer of a television quiz show and the person called believed his answers to the questions asked would be broadcast to those listening to the show. The court observed that the defendant "[w]ith visions of dollars dancing in his head . . . eagerly answered questions . . . . [Defendant] had every reason to hope that his statements would be broadcast into every home with cable television." (*Id*., at p. 249; see also *Detersea* v. *American Broadcasting Companies, Inc.* (9th Cir. 1997) 120 F.3d 460, 464-465.)

No consent may be implied here on behalf of those making the telephone calls to hotels and motels. On the contrary, persons calling hotels and motels may be disclosing personal information as to when they will be staying at the hotel or motel (perhaps indicating when their homes will be vacant), the names of others traveling with them, home telephone numbers (possibly not listed in a telephone directory), and credit card information. The callers would have an objective expectation of privacy and confidentiality, granting no implied consent to a recording of the conversation.

As for exemptions from the statutory prohibitions, none may be found applicable to hotel or motel operators. (See § 633.) However, we note that an innkeeper (or any other person) may record a specific telephone call during which a bomb threat is made. Section 633.5 explicitly permits the recordation of calls relating to the commission of certain crimes:

"Nothing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, [or] any felony involving violence against the person. . . ."

In *People* v. *Suite* (1980) 101 Cal.App.3d 680, 689, the court rejected any claim of confidentiality in connection with recording a bomb threat, noting: "A bomb threat unquestionably involves the potential for such violence." The person making the recording, however, must reasonably believe that the particular call relates to the commission of a crime in order to come within the statutory exemption.

We thus conclude that a California innkeeper may not electronically record all incoming telephone conversations so that a voiceprint may be obtained in the event a bomb threat is made. However, an individual telephone conversation that contains a bomb threat may be recorded.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter will be to the Penal Code unless otherwise designated. **Return to text**
**Footnote No. 2**
The court rejected the argument that an extension telephone could come under the exception for equipment "furnished and used pursuant to the tariffs of a public utility." (§ 631, subd. (b)(2).) The court stated:

". . . Defendant's view that section 631, subdivision (b), allows third persons to eavesdrop on conversations via extensions would be `a clear contradiction of the intent of section 631(a).' [Citation.] Moreover, the tariff exception was obviously designed to allow the use of various types of recording and monitoring equipment -- including speaker phones and telephone answering machines -- because compliance with the tariffs in such cases will normally preclude eavesdropping: the tariffs require the use of warning devices on recorders, and generally stipulate that other types of equipment not be used in a manner allowing

devices on recorders, and generally stipulate that other types of equipment not be used in a manner allowing unauthorized persons to overhear conversations. [Citation.]" (*Id*., at p. 363.)