**In re:  SEALED CASE.**

No.  97–3025.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 4, 1997.

Decided Dec. 19, 1997.

Shawn Moore argued the cause and filed the brief for appellant.

Barbara J. Valliere, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, John R. Fisher and Michael D. Brittin, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: SENTELLE, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

Opinion concurring in part and dissenting in part filed by Circuit Judge RANDOLPH.

SENTELLE, Circuit Judge:

This is an interlocutory appeal by a juvenile defendant from an order of the district court denying his motion to dismiss for lack of jurisdiction, and directing his transfer for prosecution as an adult. After examining the basis for the U.S. Attorney's certification of a "substantial federal interest" under the Juvenile Justice and Delinquency Prevention Act of 1974, 18 U.S.C. § 5032 ¶ 1, the district court upheld the certification, finding that charges for murder of a United States Postal Service mail carrier did in fact implicate such an interest. Holding also that the defendant's prior adjudication for carnal knowledge of a female child under sixteen years of age constituted a conviction for a "crime of violence," the court ordered his transfer for adult prosecution under § 5032 ¶ 4. Because we hold that a prosecutor's certification of a "substantial federal interest" under 18 U.S.C. § 5032 ¶ 1 is not subject to judicial review, and because the defendant's prior adjudications involved crimes implicating a "substantial risk of violence" under § 5032 ¶ 4, we affirm the district court's transfer order.

I

A nine-count information, charging the defendant with, *inter alia*, murder of a United States Postal Service mail carrier under 18 U.S.C. §§ 1111, 1114, alleged the following facts. The defendant, approximately four months before his eighteenth birthday, conspired with two others to commit armed robbery. During the afternoon of June 11, 1996, they observed a pedestrian walk up to a Postal Service truck to speak to the mail carrier, who was sitting inside eating lunch. Armed with a .38 caliber revolver, the defendant approached from the back of the mail truck, pointed the pistol at the mail carrier and the pedestrian, and told them to get down and give him their money. The pedestrian complied, but the driver was impeded by a chain from his belt linking him to the keys in the truck's ignition. When the defendant grabbed the driver and began to pull him from the truck, a nearby citizen yelled out, and the defendant without warning stepped back, aimed the gun at the driver and shot him in the head, then fled on foot from the scene. The mail carrier died six days later.

II

The Juvenile Justice and Delinquency Prevention Act of 1974, 18 U.S.C. §§ 5031 *et seq.* (the "Act"), states that a juvenile

shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that ... (3) the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032. Pursuant to this statute, the United States Attorney (under authority of the Attorney General, 28 C.F.R. § 0.57) filed a Certification stating that the charges included a felony crime of violence and that the government's need to protect its employees and to ensure delivery of the mail constituted a "substantial federal interest" warranting the exercise of federal jurisdiction. The defendant moved to dismiss the information on the grounds that the federal court did not have jurisdiction, and that his prior record did not justify his transfer for adult prosecution. The district court ruled that the form of the certification was proper. It further undertook to examine the basis for the government's decision, and found that the allegations in the information indeed established a substantial federal interest. While the defendant argues that the district court erred in finding a substantial federal interest in this case, the government vigorously contests the district court's ruling that it "has the authority to analyze 'more than the mere form of the government's certification' to determine whether a substantial federal interest exists." *United States v. A.W.,* No. 96–0452, 1997 WL 118408, at *2 (D.D.C. Feb. 20, 1997) (quoting *United States v. Juvenile Male No. 1,* 86 F.3d 1314, 1318 (4th Cir.1996)).

## A

■ Before considering the reviewability of a U.S. Attorney's certification of a substantial federal interest, we must address a preliminary question, raised by the panel at oral argument: whether the ruling of the district court on the validity of certification is itself properly before this court. We have squarely held that the decision to transfer a juvenile for adult prosecution is a "collateral order" qualifying as a final decision subject to interlocutory appeal under 28 U.S.C. § 1291. *In re Sealed Case,* 893 F.2d 363, 366 (D.C.Cir.1990). Therefore, the interlocutory appeal is proper; but does this subject to our review only that issue, or should we also consider the question of certification? Normally, interlocutory appeal is very restricted in criminal cases, and certification would not appear to be subject to interlocutory review on its own. *See, e.g., United States v. Brizendine,* 659 F.2d 215 (D.C.Cir.1981) (denying jurisdiction over interlocutory appeal on grounds related to plea bargaining process). However, not only is the question of certification inextricably related to the transfer order, which is properly before this court, but federal subject-matter jurisdiction depends upon certification in accordance with 18 U.S.C. § 5032. *See, e.g., Impounded,* 120 F.3d 457, 460 (3d Cir.1997) ("The courts of appeals that have considered this issue are in near unanimous agreement that the record certification requirement is a jurisdictional prerequisite in a transfer proceeding."). Because this court has the duty to inquire into our own jurisdiction, we hold that we must address the reviewability of certification when it is antecedent to another issue properly before us on interlocutory appeal.

■ Our partially dissenting colleague objects to our considering this threshold issue. However, the law requires a court to examine its own subject-matter jurisdiction in criminal cases as well as civil cases. "Subject-matter jurisdiction presents a threshold question in any federal prosecution." *United States v. Baucum,* 80 F.3d 539, 540 (D.C.Cir.) (per curiam), *cert. denied,* —— U.S. ——, 117

S.Ct. 204, 136 L.Ed.2d 139 (1996). Otherwise put, in the criminal arena as in the civil, federal courts, being "courts of limited jurisdiction have only the power to hear those cases over which Congress has conferred subject-matter jurisdiction upon them." *Id.* Because of this basic principle, before we can legitimately decide any question, whether on interlocutory or final appeal, we, like all federal courts, "are under an independent obligation to examine [our] own jurisdiction...." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990). If we are without subject-matter jurisdiction over the case ostensibly before us, then any pronouncement on any issue, even though that issue would itself be otherwise appealable, becomes a violation of our Article III limitations. There is no "distinction between civil and criminal cases" in this regard. *Baucum, supra,* is but one of many criminal cases examining subject-matter jurisdiction.

Our colleague's comparison of the certification with an indictment is not apt. It is not the case that "[i]ndictments are the functional equivalent of § 5032 certifications," simply because "both invoke the authority of the district court...." Dissent at 5. We do not suggest that § 5032 certification is jurisdictional because it invokes the authority, but rather because the statutory scheme makes it essential to the existence of that authority, as we explain hereafter. The indictment, like the complaint in a civil case, simply begins the application of an existing realm of subject-matter jurisdiction to the facts and parties of a specific case. In most criminal cases, that jurisdiction arises under 18 U.S.C. § 3231, though in the case of a transferred juvenile, it arises under chapter 403 of Title 18, § 5031 *et seq.* The "functional equivalent" of the indictment in the case of a transferred juvenile is not the certification but the criminal information. The criminal information in this case displays on its face the jurisdictional basis: "(filed pursuant to 18 U.S.C. § 5031, *et seq.*)." [1] There are subject-matter thresholds to be crossed on the criminal side as on the civil. If the certification

---

**1.** We agree with our colleague that the various other potential defects and affirmative defenses he discusses are not necessarily jurisdictional. Dissent at 5. We do not agree that they are in any way parallel to the certification in this case.

question is such a jurisdictional threshold, then we must determine if we have crossed it before we can address the interlocutory question lurking behind it. The certification is such a threshold.

■ Circuit courts addressing the validity of a prosecutor's certification of substantial federal interest have uniformly treated the certification requirement as jurisdictional. *See, e.g., Impounded,* 117 F.3d 730, 733 (3d Cir.1997); *United States v. Juvenile No. 1,* 118 F.3d 298, 303 (5th Cir.), *cert. denied,* 66 U.S.L.W. 3355 (Nov. 17, 1997). Similarly, the circuits also have concluded that the closely related question of certification of the record under 18 U.S.C. § 5032 is jurisdictional. *See Impounded,* 120 F.3d 457, 460 (3d Cir.1997); *United States v. Wong,* 40 F.3d 1347, 1369–70 (2d Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 190, 133 L.Ed.2d 127 (1995); *United States v. Parker,* 956 F.2d 169, 170 (8th Cir.1992); *United States v. Brian N.,* 900 F.2d 218, 222–23 (10th Cir. 1990). The Sixth Circuit, in *United States v. Chambers,* 944 F.2d 1253 (6th Cir.1991), *cert. denied,* 502 U.S. 1112, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992), presented a straightforward and convincing analysis demonstrating the jurisdictional nature of the certification requirement under § 5032. As that circuit noted, under the Federal Juvenile Delinquency Act, Congress "revoked the district courts' preexisting, largely unrestricted subject-matter jurisdiction over criminal prosecutions against juveniles," by declaring that acts otherwise criminal, when committed by juveniles, become generally noncriminal and merely constitute the entry into a state of "juvenile delinquency." *Id.* at 1258. Thus, a juvenile who has committed what otherwise "*would have been a crime* if committed by an adult," 18 U.S.C. § 5031 (emphasis added), has not committed a criminal offense against the United States and is therefore not within the criminal jurisdiction of the federal courts. Then, as the Sixth Circuit went on to note, Congress "partially restored" the jurisdiction it had taken away from the courts by conferring authority to proceed against juveniles alleged to have committed "acts that would be federal crimes if committed by adults," *id.* at 1259, when, but *only* when, the certification requirement is met. Therefore, the Sixth Circuit reasoned cogently, this certification must be a jurisdictional requirement. As it does go to the subject-matter jurisdiction of the court, we must answer that question before we can legitimately opine on anything else.[2]

After the federal district court has acquired jurisdiction under § 5032, the prosecution may proceed against the juvenile within that jurisdiction in two fashions. First, he may be proceeded against in a juvenile delinquency proceeding under chapter 403 of Title 18. This is specified in 18 U.S.C. § 5032, which states that "[a] juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult...." Or, if he has after his fifteenth birthday committed an act which meets the transfer requirements of § 5032, which we construe later in this opinion, he may be prosecuted as if he were in fact an adult. That he has the option under § 5032 of electing the adult proceeding does not, as the dissent suggests, establish that the certification procedure is not jurisdictional, nor

2. This answers our dissenting colleague's contention that the federal courts have jurisdiction, without certification, over the acts of juvenile delinquency under 18 U.S.C. § 3231 "which confers upon those courts 'original jurisdiction ... of all offenses against the United States.'" Dissent at 218. As the *Chambers* opinion demonstrates, under § 5031, an act of delinquency is one which "would have been a crime" had it not been for the juvenile status of the perpetrator. Therefore, the federal court loses jurisdiction under § 3231 and does not regain it unless it is conferred pursuant to § 5032. Our colleague's further suggestion that *Chambers,* contrary to its express language, does not support the conclusion that the § 5032 certification is necessary to subject-matter jurisdiction is also wide of the mark. The portion of the opinion to which he refers, 944 F.2d at 1260, concerns the time of the filing of the certificate, not its necessity. Indeed, the *Chambers* court expressly states that it is not "endorsing the government's regrettable tardiness in tendering the delayed certification, *a jurisdictional prerequisite.*" 944 F.2d at 1260 (emphasis added). In that case, as in this, the jurisdictional prerequisite was present in time for testing on appeal.

does it amount to a decision by the parties to confer subject-matter jurisdiction. That option in the fourth paragraph of § 5032 only comes into effect in the case of "[a] juvenile ... who is not surrendered to State authorities." Under the second paragraph of 18 U.S.C. § 5032, a juvenile subject to such allegations "shall be surrendered" whenever "the Attorney General does not so certify." The phrase "so certify" refers to the certification under § 5032 ¶ 1. That paragraph establishes the very certification we are holding jurisdictional. The juvenile's consent does not confer jurisdiction. It merely establishes whether the district court, which has already obtained jurisdiction via the certification, will then exercise that jurisdiction in a juvenile proceeding or in a transfer proceeding resulting in prosecution as an adult.

Our colleague asserts that he can find "[n]o significant difference" between this case and several others where courts denied interlocutory review of alleged jurisdictional defects. But *none* of the cases he cites present the situation posed here, where a legitimate question involving Article III subject-matter jurisdiction necessarily precedes another issue (transfer for adult prosecution) which we are required to review on an interlocutory basis. In *United States v. Poindexter*, 859 F.2d 216 (D.C.Cir.1988), we held allegations of grand jury taint not subject to interlocutory review, but the case presented no proper interlocutory question, nor did the grand jury issue contest federal subject-matter jurisdiction. Similarly, *United States v. Levy*, 947 F.2d 1032 (2d Cir.1991), and *United States v. Sorren*, 605 F.2d 1211 (1st Cir. 1979), both denied interlocutory review over questions of personal jurisdiction, and no proper interlocutory issue was presented. Again, *United States v. Layton*, 645 F.2d 681 (9th Cir.), *cert. denied*, 452 U.S. 972, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), held only that a purported challenge to subject-matter jurisdiction (a claim that a statute did not apply to acts outside the United States) did not, standing alone, justify interlocutory review. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), is not to the contrary. In that case, the Court held that although a pretrial order denying a mo-

tion to dismiss an indictment on double jeopardy grounds was a "collateral order" subject to interlocutory appeal, a denial of a challenge to the sufficiency of the same indictment was not. *Id.* at 663, 97 S.Ct. at 2042. But although our dissenting colleague rhetorically refers to such a challenge as one involving a court's "federal judicial power," a challenge to the sufficiency of an indictment is not a challenge to the jurisdiction of the court. Contrary to the dissent's suggestion, we do not consider the certification question here based on some theory of discretionary "pendent appellate jurisdiction." We consider that question because it is a jurisdictional prerequisite to considering another question which this circuit has held we must consider on an interlocutory basis.

### B

■ The duty to address the validity of certification does not decide the issue of our authority to look behind the U.S. Attorney's decision. Although the Fourth Circuit claims to have identified a circuit split on the reviewability of a prosecutor's certification, *Juvenile Male No. 1*, 86 F.3d at 1317–18, a closer examination of the precedents reveals that only the Fourth Circuit itself has allowed judicial inquiry into the basis upon which a "substantial federal interest" certification has been made.

In rejecting judicial review of the substantive decision underlying certification under 18 U.S.C. § 5032, three circuits have noted that the section "does not explicitly provide for judicial review of a certification, nor does it provide articulable standards" that a court can use to evaluate the exercise of the prosecutor's discretion. *Impounded*, 117 F.3d 730, 733 (3d Cir.1997) (extensively discussing the precedents). The structure of § 5032 supports this argument: this section expressly provides for judicial review of orders transferring a juvenile for adult prosecution and outlines standards for courts to apply, yet it is silent regarding review of certification. See Judge Wilkinson's concurring opinion in *Juvenile Male No. 1*, 86 F.3d at 1324. On similar reasoning, most courts have held unreviewable the bases of certification, including whether there exists an "appropriate"

state court with jurisdiction over the juvenile, *United States v. Vancier,* 515 F.2d 1378 (2d Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 107, 46 L.Ed.2d 82 (1975); *United States v. C.G.,* 736 F.2d 1474 (11th Cir.1984); and whether the case in fact implicates a "substantial federal interest," *Impounded,* 117 F.3d at 735–36; *United States v. Juvenile No. 1,* 118 F.3d 298 (5th Cir.1997); *United States v. I.D.P.,* 102 F.3d 507 (11th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997).

Other than the Fourth Circuit, those circuits that have reviewed certification at all have only tested the facial adequacy of the certification against the facial requirements of § 5032. *See United States v. Doe,* 49 F.3d 859 (2d Cir.1995) (allowing review of whether the juvenile was charged with a crime of violence or one specifically enumerated in § 5032); *United States v. Juvenile Male,* 923 F.2d 614 (8th Cir.1991) (same); *United States v. Gonzalez–Cervantes,* 668 F.2d 1073 (9th Cir.1981) (reviewing whether the certification was timely filed by an authorized person and stated the appropriate statutory factors). Courts have also suggested that it might be appropriate to conduct a closer examination to resolve allegations of bad faith, *see, e.g., United States v. C.G.,* 736 F.2d at 1478, but there are no such allegations in this case.

In holding certification subject to judicial scrutiny, the Fourth Circuit first relied on a recent decision of the Supreme Court under the Westfall Act that included the language, " 'executive determinations generally are subject to judicial review.' " *Juvenile Male No. 1,* 86 F.3d at 1319 (quoting *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 434, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995)). Under the Westfall Act, 28 U.S.C. § 2679, the Attorney General defends civil actions brought against employees of the United States and, under appropriate circumstances, certifies "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). Upon such certification, the United States is substituted for the employee as the defendant in the action and the case

proceeds under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA"). If the Attorney General refuses to so certify, an employee can seek review, alleging wrongful failure to certify under § 2679(d)(3). *Gutierrez de Martinez,* 515 U.S. at 428, 115 S.Ct. at 2233. In most cases, plaintiffs have no complaint about the substitution of the "financially reliable" United States for an individual defendant. *Id.* at 427, 115 S.Ct. at 2232–33. However, when the recharacterized case falls within an exception to the waiver of sovereign immunity under the FTCA (such as for claims "arising in a foreign country," 28 U.S.C. § 2680(k)), certification entirely disposes of the plaintiff's claims. That is, the substitution of the United States has ended the civil action against the individual employee, but the exception to the FTCA shields liability of the United States, leaving the plaintiff without remedy.

In the *Gutierrez de Martinez* case, a federal employee contended that the Attorney General's decision to certify an action under the Westfall Act was unreviewable. The Supreme Court disagreed, and held a certification subject to judicial review. In reaching this conclusion, the Court first noted that in the class of cases represented by the one before it (that is, in which the United States, if substituted, would be immune), certification is tantamount to a final judgment against the plaintiff. With that finality as a backdrop, the court went on to consider the complex of incentives weighing on the U.S. Attorney making "the impetus to certify ... overwhelming." *Id.* at 427, 115 S.Ct. at 2232–33. Shortly put, if the U.S. Attorney refuses to certify, the federal employee is left exposed, the plaintiff does not have available the deep pocket of the United States, but the immunity of the United States is still subject to assault by review of the refusal to certify under § 2679(d)(3). On the other hand, if the U.S. Attorney does certify, the employee is immune, the United States has any immunities unwaived under exceptions to the Federal Tort Claims Act, and, prior to *Gutierrez de Martinez,* the decision was unreviewable. The Supreme Court denied that immunity, recalling that "[n]o man is allowed to be a judge in his own cause." 515 U.S. at 428, 115 S.Ct. at 2233 (quoting *The Federalist No. 10,*

at 79 (J. Madison) (C. Rossiter ed., 1961)). Also, the Court noted that the statutory predecessor to the Westfall Act expressly provided for judicial review of scope of employment determinations; therefore, Congress "legislated against a backdrop of judicial review," and most likely intended to continue to allow judicial scrutiny of the "executive determination" that an employee was acting within the scope of his employment. *Id.* at 425, 115 S.Ct. at 2231–32.

This brings us to the most important distinction between § 5032 certification and the "scope of employment" certification under the Westfall Act and its predecessor statutes. In the ordinary case, the exercise of prosecutorial discretion, at the very core of the executive function, has long been held presumptively unreviewable. *See United States v. Armstrong*, 517 U.S. 456, ——, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996) (noting exception for selective prosecution and other constitutional claims); *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985) (same). We cannot agree with the Fourth Circuit that a "presumption of reviewability" applies to § 5032 certification. *See also Town of Newton v. Rumery*, 480 U.S. 386, 397, 107 S.Ct. 1187, 1194, 94 L.Ed.2d 405 (1987) (describing the "background of discretion" applicable to prosecutive decisions). The decision to invoke the power of the federal government and the criminal jurisdiction of federal courts rests peculiarly within the province of the Executive. Congress has created many areas of substantial overlap between federal and state criminal law; given the limited resources and policy objectives of the federal government, not every violation of federal law is prosecuted in federal court. The decision to certify that a particular case involves a "substantial federal interest" implicates the core prosecutorial discretion vested in the Attorney General and her delegates.

In sum, the reasoning of *Gutierrez de Martinez* is completely inapplicable to certification under the Juvenile Justice and Delinquency Prevention Act. Unlike the Westfall Act's "scope of employment" certification, § 5032 certification is not influenced by similar incentives, nor does it con-

clusively resolve the underlying case against the defendant. The "scope of employment" determination itself is inherently different from the decision to commit government resources to the prosecution of an alleged violent felon in a criminal case. The "scope of employment" determination involves the application of one element of the common law doctrine of *respondeat superior,* historically a question of law within the provenance of courts. *See, e.g., Fiocco v. Carver,* 234 N.Y. 219, 137 N.E. 309 (1922) (Cardozo, J.). On the other hand, a "substantial federal interest" may vary depending upon federal policy and upon factors "such as the general incidence of crime, the need for deterrence, enforcement priorities, and the like." *Impounded,* 117 F.3d at 734. The Executive, not the courts of law, is best qualified to determine such matters. *See Wayte,* 470 U.S. at 607, 105 S.Ct. at 1530 ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.").

The Fourth Circuit also relied on an antecedent "clear preference" in federal law for "having juvenile criminal matters handled in the state courts." *Juvenile Male No. 1,* 86 F.3d at 1320. Although recognizing that the more recent amendments to § 5032 reflect that "serious crimes committed by juveniles" are becoming "a national problem that Congress believes is best addressed on a federal level," that court said that "the focus of the juvenile statutes is still on rehabilitation within the state systems," and ruled that judicial review would further this congressional goal. *Id.* Essentially, the Fourth Circuit made this "focus" into a presumption, put this presumption on the same side of the scale as the "presumption in favor of judicial review," and with only slight mention of the prosecutive function, announced that the scales tipped in favor of reviewability. We disagree. We can discover no reason, either in the statutory language or in precedent, to conclude that Congress intended judges to intervene in prosecutorial decisions in order

to protect a "focus" on state rehabilitation of juveniles.

The defendant, relying on *United States v. Male Juvenile*, 844 F.Supp. 280 (E.D.Va. 1994), argues that federal courts should review the stated reasons underlying the government's decision to proceed in federal court in order "to make sure that 'the nature of the offense or [the] circumstances of the case give rise to special Federal concerns.' " Appellant's Brief at 6 (quoting S. REP. NO. 98–225, at 389, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3529). In the *Male Juvenile* case relied upon by appellant, the district court worried that absent a review of the Attorney General's certification, the government could prosecute a juvenile in federal court "whenever a juvenile has committed a violent felony for which there is concurrent jurisdiction." *Male Juvenile*, 844 F.Supp. at 284. Actually, the government would prosecute in federal court only when the Attorney General or her designee had determined that the "substantial federal interest" requirement of § 5032 was met. With review, the government could do so only when a court had made the same determination.

To argue that this difference compels review by judges of the Executive decision is to assume that only judges can discern the meaning of statutes, a view that is at odds with our three-part constitutional structure. The Constitution requires that the Executive "take Care that the Laws be faithfully executed." U.S. Const. Art. II § 3. This duty of fidelity requires interpretation and application of Congress's enactments, often in situations where the limitations of Article III (*e.g.*, the case or controversy requirement) prevent interpretive guidance from the courts. In prosecuting adults, the Executive constantly faces situations in which a potential defendant has violated both state and federal laws. The Executive has the duty and is presumed to have the expertise to make the decision to prosecute. Not only do we have no reason to assume the Executive less competent to make a similar decision, albeit with a higher threshold, with reference to juveniles, but there is every reason to assume that this policy-laden decision is properly entrusted to the same branch administering at the prosecutive stage the rest of the body of criminal law. There is nothing nugatory about congressional efforts to provide guidance to the Executive directly via statutory language. Not every such effort gives rise to a justiciable question. We hold that this one does not. Thus, we review the certification only to determine its presence and whether it facially supports our jurisdiction. This one does, and we can require no more.

### III

■ Once federal jurisdiction has attached, as we hold it has, the same section of the Act requires the mandatory transfer for adult prosecution of

> a juvenile who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense, ... and who has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this subsection or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed....

18 U.S.C. § 5032. In this case, the government filed a "Notice of Prior Conviction for Purposes of Mandatory Transfer of Juvenile for Prosecution as an Adult." This Notice documented that in 1993, the defendant pled guilty to carnal knowledge of a child under sixteen, in violation of D.C.Code § 22–2801, and in 1996, he pled guilty to second degree child sexual abuse, in violation of D.C.Code § 22–4109. The children involved were family members aged six and four, respectively, at the time of the offenses. The district court, ruling only on the basis of the 1993 adjudication, agreed with the prosecutor that this crime involved "a substantial risk that physical force against the person of another may be used in committing the offense," and

held the defendant subject to mandatory transfer for prosecution as an adult.

The defendant argues that the court should not look beyond the elements of the carnal knowledge offense, and that these elements do not include the use of force. We need not reach the question of whether the court should look beyond the elements of the charged offense to the charging papers or even to the facts underlying the prior conviction, because we hold that sexual abuse of a minor inherently involves "a substantial risk that physical force against the person of another may be used in committing the offense." Further, we have held already that, in a carnal knowledge prosecution, "when a child under the age of consent is involved the law conclusively presumes force." *United States v. Jones,* 477 F.2d 1213, 1218 (D.C.Cir. 1973) (applying this presumption in the context of the sufficiency of corroboration evidence). Thus, the district court properly held the defendant subject to mandatory transfer for adult prosecution under the applicable standards of § 5032.

### CONCLUSION

We hold that a federal prosecutor's § 5032 certification of a "substantial federal interest" implicates core prosecutorial judgment and discretion, and that therefore—absent allegations of bad faith or facial inadequacy of the certificate—the basis for such certification is not subject to judicial review. We uphold the certification on these grounds. Because a prior offense for sexual abuse of a minor is a crime involving a "substantial risk" of physical force, we affirm the order under 18 U.S.C. § 5032 transferring the defendant for adult prosecution in this matter.

RANDOLPH, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's opinion insofar as it upholds the district court's "transfer" of the defendant for prosecution as an adult. The balance of the opinion deals with the appeal from the district court's order regarding the United States Attorney's certification of a "substantial Federal interest," 18 U.S.C. § 5032. I cannot join this part because, in my view, we do not have appellate jurisdic-

tion to decide the matter: the order is not a final decision; it does not fall within the collateral order doctrine; we do not have pendent jurisdiction over it; and certification is not a "jurisdictional" prerequisite to the transfer order. I will take up each of these points in sequence.

First, the "courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts," 28 U.S.C. § 1291. A "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). There is no such "final decision" here. The case has not even gone to trial. And so to sustain appellate jurisdiction, we must slip the appeal into an exception. This is easy enough for the transfer order. The law of the circuit dictates that "transfer" orders fit within the limited collateral order exception to § 1291's final judgment rule. *See In re Sealed Case,* 893 F.2d 363, 366–68 (D.C.Cir.1990); *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Certification orders cannot be squeezed through that opening, which brings me to point two.

Appealable, final collateral orders share several characteristics, one of which is that "denial of immediate review would render impossible any review whatsoever," *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971). In criminal cases—apart from those dealing with the constitutional right to bail—the collateral order exception has been invoked when an order deprives the defendant of some "right not to be tried." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 800, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989). Transfer orders may be of that sort. District court orders passing on the validity of the Attorney General's certification are not. If defendants are entitled to judicial review of such orders, the review may be had after conviction and sentencing. The certification requirement of § 5032 no more confers upon a defendant a "right not to be tried" than does the Sixth Amendment's guarantee of a speedy trial, or the due process prohibition

against vindictive prosecution, or the requirement that grand juries not be influenced by government violations of Rule 6(e) of the Federal Rules of Criminal Procedure. While violation of those proscriptions ordinarily demands dismissal of the indictment, a district court's refusal to dismiss may not be raised in an interlocutory appeal. *See Midland Asphalt Corp.*, 489 U.S. at 798–802, 109 S.Ct. at 1497–1500; *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 264–70, 102 S.Ct. 3081, 3082–85, 73 L.Ed.2d 754 (1982); *United States v. MacDonald*, 435 U.S. 850, 852–61, 98 S.Ct. 1547, 1548–53, 56 L.Ed.2d 18 (1978).

My colleagues acknowledge that the certification order "would not appear to be subject to interlocutory review on its own." Maj. op. at 210. That eminently correct observation, shared by one other circuit (*see United States v. Juvenile Female*, 869 F.2d 458, 460 (9th Cir.1989)), should have put an end to the appeal from that order. If not the collateral order doctrine, what other basis is there for asserting appellate jurisdiction? Some federal appellate courts, ours included, have devised a doctrine of "pendent" appellate jurisdiction in civil cases. *See, e.g., Swint v. Chambers County Comm'n*, 514 U.S. 35, 44–45 n. 2, 115 S.Ct. 1203, 1209 n. 2, 131 L.Ed.2d 60 (1995); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C.Cir.1997). This enables a court of appeals to reach out and review orders over which it has no independent jurisdiction. But pendent appellate jurisdiction has no place in criminal cases, where the final judgment rule is "at its strongest." *Hollywood Motor Car Co.*, 458 U.S. at 265, 102 S.Ct. at 3082. The Supreme Court could not be clearer on the point—in criminal cases, would-be pendent claims "are appealable if, and only if, they too fall within *Cohen's* collateral-order exception to the final-judgment rule." *Abney v. United States*, 431 U.S. 651, 663, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977); *see also MacDonald*, 435 U.S. at 857 n. 6, 98 S.Ct. at 1551 n. 6; *United States*

*v. Rostenkowski*, 59 F.3d 1291, 1301 (D.C.Cir. 1995); *United States v. Crosby*, 20 F.3d 480, 487 (D.C.Cir.1994); *Juvenile Female*, 869 F.2d at 460; Note, *The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context*, 100 YALE L.J. 511, 520 (1990).

Now to point four. The majority's theory, as I understand it, flows from a line of cases such as *Mansfield, Coldwater & Lake Michigan Railway v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511–12, 28 L.Ed. 462 (1884), which holds that a federal appellate court must first satisfy itself of its jurisdiction and then must make sure that the lower court also had jurisdiction. *See, e.g., Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 & n. 4, 106 S.Ct. 1326, 1331 & n. 4, 89 L.Ed.2d 501 (1986). This leads the majority to think that given our appellate jurisdiction over the transfer order, we are obligated to examine the district court's certification order because the certification order was "jurisdictional." *See* maj. op. at 209–212. I part company on two grounds.

First, the majority's principal authority— *United States v. Chambers*, 944 F.2d 1253, 1257–61 (6th Cir.1991)—does not support its conclusion. To be sure, *Chambers* held that a § 5032 certificate from the Attorney General was essential to sustaining the district court's jurisdiction.[1] But the Sixth Circuit also held that the certificate did not have to be filed before trial because it was not a prerequisite to "*initiating* federal proceedings" against the juvenile offender. 944 F.2d at 1260. (The government there did not file its certificate until the close of its case-in-chief, *id.* at 1257.) Other courts have reached the same conclusion. *See, e.g., United States v. Gonzalez–Cervantes*, 668 F.2d 1073, 1077 (9th Cir.1981); *United States v. Ramapuram*, 432 F.Supp. 140, 143 (D.Md. 1977), *aff'd*, 577 F.2d 738 (4th Cir.1978) (unpublished). In short, *Chambers* undercuts rather than supports the majority's essential proposition—that without a valid and proper

---

1. The majority cites two other cases—*Impounded*, 117 F.3d 730, 733 (3d Cir.1997), and *United States v. Juvenile Male #1*, 118 F.3d 298, 303 (5th Cir.1997)—supposedly holding that the requirement that a prosecutor certify a substantial federal interest was jurisdictional. *Impounded*

merely "assume[d]" that the § 5032 certification is a prerequisite to the district court exercising jurisdiction over the transfer hearing." 117 F.3d at 733. *Juvenile Male #1* made the same assumption. 118 F.3d at 303–04.

certificate, the district court would have no jurisdiction to review the transfer order.

My next and final ground for disagreement is this—the Attorney General's certification is not, as the majority supposes, "jurisdictional." In criminal cases, the jurisdiction of federal district courts stems from 18 U.S.C. § 3231, which confers upon those courts "original jurisdiction ... of all offenses against the United States." The policy reflected in § 5032 may be one of abstention, of permitting the federal criminal laws to be invoked against juvenile violators only in limited situations. *See Chambers,* 944 F.2d at 1258. Even so, the text of the Federal Juvenile Delinquency Act does not revoke the existing jurisdiction of the district courts over juvenile violators. If that had been the idea—my colleagues think it was—Congress used a very obscure method of expressing its desire, quite different than the clear language of jurisdiction found in so many other jurisdiction-affecting statutes. The Act, in § 5032, states that the juvenile "shall not be proceeded against in any court of the United States unless the Attorney General" certifies to one of the three exceptions, the last of which mentions "substantial Federal interest." The words "proceeded against" are not directed to the jurisdiction of the courts. Courts do not proceed against persons. Prosecutors do. And it is prosecutors, or more accurately the Attorney General, who are the addressees of this language. It is therefore scarcely surprising that the majority's mistreatment of certification as jurisdictional poses vexing problems, problems my colleagues do not bother to answer. There is, for instance, a provision in § 5032 allowing a juvenile to request in writing that he not be tried as a juvenile and that he be "proceeded against as an adult." Such a written waiver takes the juvenile out of the Act. If we now plug in the majority's jurisdictional theory, the consequence is that juvenile defendants may confer jurisdiction on district courts by consenting to be tried as adults. What happened to the time-honored principle that parties cannot, by consent, confer jurisdiction on the federal courts? Consider also the majority's suggestion that certification may be open to challenge for "bad faith." Maj. op. at 216. Is one to suppose that jurisdiction now turns on the state of mind of one of the litigants? I cannot understand why we should be reaching so far, and in such an unorthodox manner, to bestow the label "jurisdictional." The Act sets up a system for dealing with juveniles already subject to federal jurisdiction under 18 U.S.C. § 3231 because of their alleged "violation of a law of the United States," 18 U.S.C. § 5031. The certification requirement in § 5032, as the majority itself appears to acknowledge, *see* maj. op. at 215, merely codifies Congress's judgment about when the Attorney General may invoke this jurisdiction.

It is not enough to answer that the exercise of federal judicial power depends on a § 5032 certificate. One could say the same about a grand jury indictment. Yet the Supreme Court in *Abney,* while sustaining its appellate jurisdiction to consider the defendant's double jeopardy claim, refused to reach his challenge to the sufficiency of the indictment. *See* 431 U.S. at 663. Indictments are the functional equivalent of § 5032 certifications; both signify that there is a significant federal interest; both invoke the authority of the district court to proceed; both are subject to challenge. Yet indictments cannot be considered "jurisdictional" in any meaningful sense. Simply because some condition or requirement is a prerequisite to criminal proceedings does not make the condition or requirement jurisdictional. A case must be brought within the period of limitations. There must be a speedy trial. The grand jury must be properly constituted. Trial must occur in a specified venue. Some offenses must be tried by a jury. Defendants are entitled to counsel. None of these are considered "jurisdictional."

We would do well to remember that calling something "jurisdictional" will have lasting, important and perhaps unanticipated effects in future cases. If the Attorney General's certification is jurisdictional, as my colleagues hold, challenges to it may be raised initially in the middle of trial, or right before sentencing, or on appeal, or in a petition for rehearing, or at any other time. Also, if the certification is jurisdictional, the juvenile defendant may not waive the requirement, even I suppose by pleading guilty. Yet I see no

good reason—the majority offers none—why a defendant should be permitted to attack a certificate for the first time on appeal, or why a juvenile cannot waive the requirement altogether, or why a § 5032 certificate ought to be considered any more important than the many constitutional and statutory requirements which must be raised at trial and which can be waived.

In short, I believe that rather than succumbing to the temptation to resolve the issue on its merits, the majority should have dismissed the appeal from the district court's certification order on the authority of *Abney v. United States.*