**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 13, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 23-2178

XAVIER ZAMORA,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:22-CR-00909-JCH-1)**
_____

Ellen H. Phillips, Squire Patton Boggs (US) LLP (Keith Bradley, Denver, Colorado, with her on the briefs), Cincinnati, Ohio, for Defendant-Appellant.

Fred J. Federici, Assistant United States Attorney (Alexander M.M. Uballez, United States Attorney and James R.W. Braun, Assistant United States Attorney on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Defendant Xavier Zamora, then seventeen years old, shot and killed Jose Hernandez, a United States postal worker, while Hernandez was on his mail delivery route for the United States Postal Service.  The United States charged Defendant as a

juvenile under the Federal Juvenile Delinquency Act (JDA).  18 U.S.C. §§ 5031–5043. To obtain federal jurisdiction over Defendant, the JDA requires, among other things, that the Attorney General certify "there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction."  *Id.* § 5032.  The United States Attorney for the District of New Mexico listed the crimes charged against Defendant and certified, "[t]herefore there is a substantial federal interest in each enumerated charge to warrant the exercise of federal jurisdiction."  After being transferred to adult status pursuant to the JDA, Defendant pleaded guilty to Second Degree Murder of an Employee of the United States in violation of 18 U.S.C. § 1114(1) and to Possessing a Firearm in Furtherance of Such Crime; Resulting in Death in violation of 18 U.S.C. §§ 924 (c)(1)(A)(iii), (j)(1).

On appeal, Defendant challenges the United States Attorney's certification. Specifically, Defendant argues no substantial federal interest exists and the certification is facially deficient, so the district court lacked federal subject-matter jurisdiction over Defendant's case.  We review Defendant's claims de novo.  *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (reviewing de novo legal questions of statutory interpretation and jurisdiction).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

The parties do not challenge the following facts on appeal.  Hernandez was delivering mail to a cluster mailbox near Defendant's residence when a domestic dispute between Defendant and his mother spilled outdoors.  Defendant believed his mother owed him money.  After arguing inside for some time, Ms. Zamora left the

2

house through the garage.  Spotting Hernandez on his mail route, Ms. Zamora called to him and asked Hernandez to "keep an eye out" for her son.  Defendant emerged from the residence shortly thereafter and began calling Ms. Zamora names in front of Hernandez.  Hernandez intervened and told Defendant he should not be talking to his mother that way.  But the argument continued and escalated into physical violence when Defendant hit his mother.  Hernandez again spoke up and said Defendant should not hit a woman.  At this point Defendant turned his anger toward Hernandez, approaching him.  Hernandez retreated and pulled out a can of dog repellant spray. Undeterred, Defendant struck Hernandez in the face.  Hernandez regained his balance and then ran at Defendant.  Defendant withdrew into his residence, and Hernandez did not follow him.  Rather, Hernandez began walking back toward his postal service vehicle which was parked a little past the next-door neighbor's driveway.  But Defendant was not finished with Hernandez.  He emerged again from the house, this time with a 9mm firearm and his eyes on Hernandez, whom he approached.  Hernandez shook his can of dog repellant spray, but his attempt to dissuade Defendant was to no avail.  Defendant shot Hernandez in the stomach and fled the scene.  Hernandez died from internal bleeding less than thirty minutes later.

Defendant's appeal requires us to decide a question unsettled in our Circuit— the extent of our power to review a certification under the JDA that a "substantial Federal interest" exists, warranting the exercise of federal jurisdiction. *See* 18 U.S.C. § 5032.  Eleven of our sister circuits have addressed this question and held the substantive basis for a United States Attorney's certification is not subject to judicial

3

review.[1]  Only the Fourth Circuit has reviewed the substance of such a certification. *See United States v. Juv. Male No.* 1, 86 F.3d 1314, 1317–1320 (4th Cir. 1996).  Today, we join the overwhelming majority of our sister circuits and hold "the United States Attorney's certification of a substantial federal interest is an unreviewable act of prosecutorial discretion."  *United States v. Juv. Male J.A.J.*, 134 F.3d 905, 909 (8th  Cir. 1998).

> The plain language of § 5032 guides our analysis.  It provides, in relevant part:
>
> A juvenile alleged to have committed an act of juvenile delinquency . . . shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that . . . (3) the offense charged is a crime of violence that is a felony or an offense described [in named provisions] *and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.*

18 U.S.C. § 5032 (emphasis added).  Section 5032 thus requires "the Attorney General to undertake an investigation and then simply 'certify' that there is a 'substantial Federal interest in the case or the offense.'"  *United States v. Doe*, 226 F.3d 672, 678 (6th Cir. 2000) (quoting 18 U.S.C. § 5032).  Section 5032 does not require that the

---

[1] *See United States v. Smith*, 178 F.3d 22, 25–26 (1st Cir. 1999); *United States v. Vancier,* 515 F.2d 1378, 1380–81 (2d Cir. 1975); *United States v. Rammelkamp*, 270 F. App'x. 35, 38 (2d Cir. 2008) (unpublished) (applying *Vancier* to the relevant, amended version of 18 U.S.C. § 5032); *Impounded*, 117 F.3d 730, 733–736 (3d Cir. 1997); *United States v. Juvenile No. 1*, 118 F.3d 298, 303–307 (5th Cir. 1997); *United States v. Doe*, 226 F.3d 672, 676–78 (6th Cir. 2000); *United States v. Jarrett*, 133 F.3d 519, 538–41 (7th Cir. 1998); *United States v. Juvenile Male J.A.J.*, 134 F.3d 905, 906–09 (8th Cir. 1998); *United States v. F.S.J.*, 265 F.3d 764, 767–71 (9th Cir. 2001); *United States v. I.D.P.*, 102 F.3d 507, 510–13 (11th Cir. 1996); *In re Sealed Case*, 131 F.3d 208, 212–15 (D.C. Cir. 1997).

Attorney General identify a specific substantial federal interest in the certification.  It does not even "condition federal proceedings against a juvenile on the actual *existence* of a substantial federal interest."  *United States v. Jarrett*, 133 F.3d 519, 538–39 (7th Cir. 1998).  Rather, under § 5032's plain language, jurisdiction may be obtained so long as the Attorney General certifies such an interest exists.  *Id.* at 539.  "Section 5032, therefore, makes the test a subjective one—whether the Attorney General's investigation reveals to him/her a substantial federal interest."  *Id.*  Consequently, there is nothing beyond facial compliance with § 5032's certification requirement for us to review.

Moreover, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, [we] generally presume[] that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *In re Doll*, 57 F.4th 1129, 1142 (10th Cir. 2023) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  Here, § 5032 "clearly distinguishes between a United States Attorney's motion to transfer a juvenile to adult court—which is explicitly subject to judicial review and has specific standards for review—and the United States Attorney's certification of a substantial federal interest—which is standardless and not explicitly subject to review."[2]  *Juv. Male J.A.J.*, 134 F.3d at 908.  While "[j]udicial review is not

___

[2] The transfer provision instructs courts to consider "the following factors" when finding, "after a hearing" a transfer to adult status "would be in the interest of justice":

> the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the

usually conditioned on the existence of a specific statutory license to that effect," and while the lack of meaningful guidance for review may not foreclose review, the absence of such language "becomes important when the same statute *does* expressly authorize judicial review of another matter." *Jarrett*, 133 F.3d at 539. The notable absence of an invitation for review and of meaningful guidance for review, suggests that unlike a transfer to adult status, the substantial federal interest certification is not reviewable. The JDA's structure is thus consistent with its text—the substantial federal interest determination rests in the Attorney General's hands and is not subject to judicial review.

Section 5032 does nothing novel by entrusting this policy laden decision to the Attorney General because the decision to prosecute is ill suited to judicial oversight. *See Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* Accordingly, that Congress would leave to the Attorney General's

---

nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032.

discretion the decision to commit federal resources to prosecution of a juvenile in a federal forum is not surprising.[3]

Defendant urges us to presume we have the power to substantively review the United States Attorney's certification. The presumption favoring judicial review of administrative action is well-settled and commonly applies in cases arising in the Administrative Procedure Act and immigration contexts. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967) (explaining the Administrative Procedure Act "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute'" (quoting 5 U.S.C. § 702)); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (explaining the Court has "consistently applied" the presumption of reviewability to immigration statutes). But we cannot agree the presumption favoring review extends to a United States Attorney's decision to prosecute in a federal forum. *See Wayte*, 470 U.S. at 608 ("courts [are] properly hesitant to examine the decision whether to prosecute"). To argue such a presumption extends here, Defendant principally relies upon *Guiterrez De Martinez v. Lamagno*, 515 U.S.

---

[3] Defendant observes, and correctly so, that not all prosecutorial decisions are insulated from judicial review. A "prosecutor's discretion is 'subject to constitutional constraints,'" and a prosecutor must have probable cause to believe that the accused committed an offense defined by statute. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)). But in the ordinary case, so long as the prosecutor has probable cause, "the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.*

417 (1995), a case in which the Supreme Court applied a presumption of reviewability to a United States Attorney's certification that a United States employee was acting within the scope of his employment under the Westfall Act, 28 U.S.C. § 2679. The Fourth Circuit, citing *Lamagno*, extended the presumption of reviewability to the JDA's certification requirement. *Juv. Male No.* 1, 86 F.3d at 1319–20. But key distinctions between *Lamagno* and this case lead us to conclude, "the reasoning of *Gutierrez de Martinez* is completely inapplicable to certification under the Juvenile Justice and Delinquency Prevention Act." *In re Sealed Case*, 131 F.3d 208, 214 (D.C. Cir. 1997).

In *Lamagno*, citizens of Colombia brought a negligence action against an employee of the United States. *Lamagno*, 515 U.S. at 420–21. Pursuant to the Westfall Act, the United States Attorney certified that the defendant acted within the scope of his employment when the alleged negligence occurred. *Id.* at 421. Significantly, the certification was tantamount to a final judgment in the case because upon certification, the United States replaced the employee as defendant and sovereign immunity applied. *Id.* at 421–22. The Supreme Court concluded the scope-of-employment certification was reviewable, emphasizing at the outset, "[t]wo considerations weigh heavily in our analysis." *Id.* at 424. First, the Attorney General urged review because the United States Attorney had an overwhelming incentive to certify the case under the circumstances.[4] *Id.* at 428. Second, the Court observed, "when a Government

---

[4] If the United States Attorney refused certification, the employee could allege wrongful failure to certify. *Lamagno*, 515 U.S. at 428. Conversely, by certifying, the

official's determination of a fact or circumstance—for example, 'scope of employment,'—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable. Instead, federal judges traditionally proceed from the 'strong presumption that Congress intends judicial review.'" *Id.* at 424 (citing *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670 (1986)).

But neither of the two weighty considerations at work in *Lamagno* are applicable here. "Unlike the Westfall Act's 'scope of employment' certification, § 5032 certification is not influenced by similar incentives, nor does it conclusively resolve the underlying case against the defendant." *In re Sealed Case*, 131 F.3d at 214. Instead, and most significantly, the United States Attorney's § 5032 certification "is no different from its authority to decide whether to prosecute a case in a federal forum. This type of decision falls squarely within the parameters of prosecutorial discretion." *United States v. I.D.P.*, 102 F.3d 507, 511 (11th Cir. 1996). So we cannot agree that a presumption of reviewability extends here. Rather, if anything, "the exercise of prosecutorial discretion, at the very core of the executive function, has long been held presumptively *unreviewable*" in the ordinary case. *In re Sealed Case*, 131 F.3d at 214 (citing *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996)) (emphasis added).[5]

---

United States would be immune from suit. *Id.* Consequently, certification benefited the United States and the employee, but failing to certify exposed the United States to litigation inuring only to the employee's potential benefit. *Id.*

[5] Defendant also asks us to exercise review, as the Fourth Circuit did, given "the focus of the juvenile statutes is still on rehabilitation within the state systems." *Juvenile Male No. 1*, 86 F.3d at 1320. But as the D.C. Circuit aptly explained, "[w]e can discover no reason, either in the statutory language or in precedent, to conclude

In sum, the Attorney General's certification that a substantial federal interest exists to warrant the exercise of federal jurisdiction in a case is an unreviewable act of prosecutorial discretion.  So we do not reach the merits of Defendant's argument that no substantial federal interest supports the district court's subject matter jurisdiction.  Instead, "we review the certification only to determine its presence and whether it facially supports our jurisdiction.  This one does, and we can require no more."  *Id.* at 215.

In the alternative, Defendant argues the certification is facially deficient because it failed to identify a substantial federal interest beyond the crimes charged.  Specifically, Defendant argues § 5032 requires 1) identification of a substantial federal interest and 2) that the asserted interest must be different from the crimes charged.  Otherwise, Defendant contends jurisdiction may obtain anytime there is a qualifying crime, rendering the substantial federal interest requirement superfluous.  The certification here identified the crimes charged and stated "[t]herefore there is a substantial federal interest in each enumerated charge to warrant the exercise of federal jurisdiction."  So Defendant contends the certification only identified a substantial federal interest in the crimes charged and is facially deficient.

Defendant's argument fails at the first step because, again, § 5032 plainly imposes no requirement that the Attorney General *identify* a substantial federal interest at all.  Rather, § 5032 requires merely that "the Attorney General undertake an

---

that Congress intended judges to intervene in prosecutorial decisions in order to protect a 'focus' on state rehabilitation of juveniles."  *In re Sealed Case*, 131 F.3d at 214–15.

investigation and then simply '*certify*' that there is a 'substantial Federal interest in the case or the offense.'  No language supports [Defendant]'s argument that the government must make a factual showing in order to carry its burden under § 5032." *Doe*, 226 F.3d at 678 (quoting 18 U.S.C. § 5032) (emphasis added).  Consequently, § 5032 imposes no restriction on the type of interest the Attorney General may identify in a certification as the Attorney General need not identify any interest at all.  Any interest identified is surplusage, not an invitation to weigh the merits of the reasons underlying a § 5032 certification.

Finally, the certification requirement is not superfluous.  Rather than permitting the government to prosecute a juvenile in federal court whenever a juvenile commits a qualifying crime under the JDA, the JDA requires the Attorney General to conduct an investigation and certify that a substantial federal interest exists.  In other words, "the government would prosecute in federal court only when the Attorney General or her designee had determined that the 'substantial federal interest' requirement of § 5032 was met."  *In re Sealed Case*, 131 F.3d at 215.  The certification here asserts, as required, that "there is a substantial federal interest in each enumerated charge to warrant the exercise of federal jurisdiction."  Thus, the certification is facially valid.

We AFFIRM the district court's exercise of jurisdiction under the JDA.